Good morning. May it please the Court, I'm Barbara Valliere on behalf of the United States. I'd like to reserve five minutes for rebuttal. In this case, the defendants are charged with criminally manipulating the electricity market in June of 2000. The District Court here, pre-trial, excluded a portion of the protocol that governed the market that the defendants are charged with manipulating. The government is appealing that ruling because without the protocol, the jury will be deprived of critical evidence about the nature of the market and about the effect defendants' conduct had on it, and because the District Court offered no valid reasons for excluding it. In our view, the District Court erred in two ways in excluding this evidence. First, it substantially undervalued its probative value, and secondly, it seemed to misapply this Court's decision in United States v. Wolf. With respect to the first argument, that the Court actually substantially undervalued this evidence before excluding it, it's important to remember that in this case, that the energy market in June of 2000 was a regulated industry. The regulations in this particular market, this particular market was governed by a specific and very detailed tariff and protocols. The defendants in this case, actually the defendants in this case, that means Reliant and two of the named defendants, actually signed participating, signed agreements that they would abide by the tariff and the protocols in scheduling electricity into the controlled grid. One of those protocols in this case was the Market Monitoring and Information Protocol, the so-called MMIP. That MMIP is a work plan for the regulators to monitor the market for abuses. In fact, the work plan, the MMIP, identifies specific practices that are considered either anomalous or outside how the market participants were supposed to behave in this market. Some of those specific practices included, for example, that they would, that generators, withholding generating capacity where it would normally be offered in a competitive market and submitting excessive bids into the market. Here, the defendants are charged with manipulating the market under the CEA. And part of that was the MMIP binding on participants in the market? Yes, it was, Your Honor. In the following way, the market participants were told at the time that they entered into their scheduling of coordinator agreements that their behavior in this market was governed by the tariff and the protocols. The protocol is a work plan that would, told the market participants that they would be scrutinized for a particular type of conduct, and the conduct is specifically identified. So, yes. So Big Brother is watching you becomes part of a criminal case? I mean, where's the connection between saying Big Brother's out there, be careful, and saying you better do what we say in this protocol, because they'll be used to show that you were criminally responsible? Well, actually, the criminal case here, there's four elements of the CEA. One is that there's an artificial price. Two, that defendants had the influence, they had the ability to influence that price. Three, that they had the specific intent to create the artificial price. And four, that they caused it. To show that there was an artificial price, the government has a burden of demonstrating that the defendant's conduct was extrinsic to the market. That means that they engaged in behavior that had the potential to render this price artificial or somehow distorted. This protocol identified conduct, specifically identified conduct that may render the price distorted in this particular market. And the defendants, the significance of the MMIP in this case is threefold. First, it does give the jury some indication and some knowledge about the background and the regulations here, how this market was designed to operate and how the prices were supposed to be developed, how they were supposed to be determined. This conduct was supposed to be, this conduct was considered suspect or outside the normal forces of supply and demand. Perhaps more importantly in this case, what this provided was it provides the jury with an understanding that the defendants actually had knowledge that this conduct was viewed as being suspect in this market. And that the defendants had, therefore, had the specific intent to create the artificial price because they were engaging conduct that was already viewed as being suspect. And what's that equivalent to, to say it's suspect? Is that notice that it's criminal? No. In fact, Your Honor, the government has never argued that a violation of the MMIP or that the, it's a, they never argued this in terms of a violation of the MMIP at all in any event. What it's arguing is this is a, this was a guidepost. This was known to the market participants about how they were supposed to behave in this particular market. And that if they engage in this kind of conduct, yes, acts could occur. Specifically, the regulators could either change the rules, they could impose sanctions or recommend that sanctions be imposed for participating in this particular, this type of conduct in the market. And the reason why it's significant to our case is that to prove that the defendants were acting outside the, or extrinsic to the, to the normal forces of supply and demand in this particular market, we'd have to demonstrate how the market was regulated itself, how the regulators looked to the market participants. It was not an unregulated market. It was not just anything goes. They had to agree to abide by the tariff and the protocols in order to even schedule electricity onto this, onto the control grid. But even, there's even another purpose for this evidence, which was, it goes a long way toward explaining the government's other proof in this case, which is there are tape recordings, massive number of tape recordings in this case, in which the defendants are heard conspiring to basically manipulate the price of electricity during those three days. And this evidence, the MMIP, is the best evidence that, of the reasons why they were conspiring to develop a cover story for their conduct. In other words, they were just, they were conspiring to keep their conduct from the regulators because they recognized that if they told the regulators that, in fact, we're shutting down our plants or we're submitting excessive bids because we don't like the price, if they told the regulators that, in fact, that's the reason we're doing it, the regulators would have acted. The MMIP gave them authority to act and to do something if they had knowledge that the defendants were engaged in that kind of conduct. So the defendants had a motive to devise a cover story for the reasons why they were shutting down their plants. And the cover story they developed was that they were concerned about their environmental emissions and also that they were, they needed to do some maintenance, neither of which the government alleges and the government will prove is true. So in this particular case, the MMIP has multiple, multiple purposes. That is, that it demonstrates at least the manner in which the market was designed, that these, the prices, the price that was actually set is artificial. It demonstrates, perhaps more importantly, the defendants' intent, the defendants' intent to create an artificial price because they were purposely engaging in conduct that was outside the normal forces of supply and demand. But it also shows, for purposes of the CEA count, the manipulation count and for the wire fraud count, the defendants' deceptive conduct. It supports the reasons why the defendants were devising a cover story for their conduct at the time. Now, I've gotten to... Is the MMIP critical or crucial or something you can't get along without when the government tries to prove the state of mind of the market participants in the critical period? I think that it's critical, Your Honor. Is it something we can do without? We would try the case even if we did not get a reversal here. But is it critical? Yes, it's critical because it affects the jury's understanding of all of the other evidence, which is it motivated the defendants' conduct. It, to some extent, or at least in part motivated the defendants' conduct. It also provides a crucial link between understanding why it is, not only that they behaved this way, but why they were so wary of the regulators during those days. The jury will consider this like they consider any other evidence on the question of artificial price, intent to create artificial price, and the defendant's scheme to defraud. The court here, however, I mean, I mention all of these different purposes because all of these were, of course, offered to the district court as the reasons why we needed this evidence. And the court simply, the court excluded it for what we think are two invalid bases. The first is the court said you don't need the evidence. That is, one, legally an invalid reason to exclude the evidence because the government, as the Supreme Court has stated in Old Chief, the government is entitled to put on essentially its best evidence or the evidence of its choice. So the fact that we may not need the evidence doesn't provide a legal basis for excluding it. If there's no constitutional or statutory bar to its admission, then the court cannot exclude it unless it is excluded under Rule 403, and I'll get to that in a moment. But the second reason, perhaps more important reason why the notion that the government doesn't need this evidence was legal error here, excuse me, was error here was because it was factual error. The expert really, the court was of the view that the expert can testify. The expert can tell the jury what legitimate price is. The expert can give them sort of an economic analysis of this particular market. Of course, the expert would be then testifying somewhat in a vacuum. There were rules. There were rules and there were guidelines and signposts in this particular case. And it would be like asking the jury in this case to essentially decide, I think our hypothetical in our reply brief characterizes it as in a negligent homicide case, it would be like asking the jury to decide whether or not the defendant was reckless and yet omitting any of the signposts along the road that the defendant was warned, one, to go slowly or what the speed limit is, or even if he was only warned by a sign that this is evidence of the rules of the roads for the market participants and excluding it excludes very important, would deprive the jury of that evidence. The judge, however, thinks the judge thinks that the expert's testimony is an apt substitute for that evidence. It's just factually wrong. The jury would not understand the expert's testimony about what was permitted in this market, or at least it would be unsupported unless they see the MMIP. In addition to that, the expert can testify about the defendant's state of mind, and it certainly can't explain the defendant's conduct with reckons to the MMIP or the existence of this guideline without the jury actually having the document in its hands. So the court's determination that the government did not need this and therefore excluding it was both factually and legally wrong. But the court was also wrong because the court, it appears, although it was never stated during the time in which the court actually excluded the evidence, but it appears the court's decision in United States v. Wolfe, which was a case in which the court held that post-trial, examining the trial, that the government had misused a civil regulation to supply the element of a criminal offense. Here, in Wolfe's case, what had happened was the government had actually relied on this so-called Regulation O to supply an element, to provide the legal definition of an element. Here, and actually in Wolfe, the government had actually, and indicted the case referring to Regulation O, and the government apparently argued that, if you want to know, that, as I understand the case, misapplication is defined by Regulation O. Here, the government has not alleged in the indictment a violation of the MMIP. The government has no intention of arguing a violation of the MMIP. What the government intends to do is use it, as I've explained, and as evidence of their motive to cover up their conduct. In Wolfe, there was no instruction to the jury that they cannot consider a civil regulation as proof for purposes of establishing criminal viability. In other words, they were not warned off the problem that the court later on concluded was the taint. Here, the government has agreed, pre-trial, we agreed that the jury should be instructed that civil violation, if they were to conclude there was a violation of the MMIP, can't establish criminal liability here. All it can do is provide evidence, evidence of, one, what the regulatory scheme was, two, what their intent was, and three, what their motive was. So the taint that occurred in Wolfe, we have already recognized could be ameliorated by the jury instruction. And, of course, if we do try the case, and if during the case we misuse the MMIP, I'm certain that if we get a conviction, the defendants will be standing here saying that the court should reverse because the government has misused the MMIP. It didn't provide the district court with a justification of excluding it entirely. And in fact, it didn't provide the court with a justification for entirely excluding it because Wolfe actually stands for the proposition that a civil regulation is admissible as background evidence on intent and motive, two of the specific purposes for which the government has operated here. So in our view, the court here erred in two respects. One, there it erred by determining that the government did not need the evidence, both legally and factually. And secondly, it misapplied the court's decision in Wolfe. We think that the jury in this case cannot properly render a fair verdict. It cannot properly understand the government's evidence without having accessible to it the MMIP. Without the MMIP, the jury will have a significant hole in the applicable rules that govern this market at the time, and they will not understand the tape recordings or any of the other evidence or not properly understand the tape recordings or any of the other evidence that will be submitted at trial. And for that reason, we ask that you reverse the ruling. And I'd like to... Do you have a jury down below that's been waiting all this time? No, we don't, Your Honor. Actually, we filed the notice of repeal right before trial, but the court has... So before trial. Before trial, yes. And the court has indicated that it wants the parties to determine a date. Hopefully, the court said August and September, but I don't think there's been no trial date that's been set at this point. Thank you. May it please the Court, I'm William Jeffress, appearing on behalf of all the defendants and appellees in this case. One thing not mentioned in the argument, but which is key to this case, I believe, is the standard of review for this court. It is, of course, abuse of discretion. Well, that works so far as the decision, the decision that the court has made,  the apparent Wolf decision is concerned. It doesn't necessarily work for admissibility on intent and motive, because the judge just apparently didn't rule on it. Well, Your Honor, it's odd. It is true that the judge said nothing in his, I think, two sentences or three sentences in which he announced his ruling. But it is certainly not true that he did not hear and consider the arguments with respect to motive, to intent. Let me get to motive in a minute. With respect to intent, they were argued by the government in its opposition to the motion. They were argued at oral argument. And certainly, Judge Walker considered that. I would refer to, Your Honor, to the case of United States v. Ono, which was very similar in that respect in the sense that in making his ruling, the judge did not specifically refer to particular arguments that had made or engage in an on-the-record balancing. But the court said that's not necessary. We can look at it. I understand that, and I completely agree with the principle. But here, he just didn't appear to deal at all with the intent and motive thing. And it does make a difference, even if you're right that abuse of discretion applies across the board, because it seems to me that the wolf, the straight-up wolf issue, maybe it is hard to say it's an abuse of discretion. I don't understand wolf, but whatever. Let's just say it's not an abuse of discretion. But wolf, we and Brown and Smith and every other circuit to look at the question have said, even so, evidence is admissible on intent and motive. And so if that's the case, then it would be an abuse of discretion, even if that's the right standard, wouldn't it, on intent and motive? Well, it's obviously up to the judge, in the first instance, the trial judge, to make the case, number one, not just relevant, but whether it would tend to mislead the jury. And I think fully to answer Your Honor's question, I need to say a little bit more and give a little bit of background in terms of how this fits into the case, because as the Court is aware, there's never been a case under this statute, a criminal case under this statute. Judge Walker, as indicated by his lengthy opinion in February denying our motion to dismiss, has been struggling mightily with questions as to whether the standard of conduct provided by the CEA in a criminal case in an electricity market where it's never been applied is void for vagueness, for one thing, and number two, how it should be interpreted to save it from void for vagueness. He is then presented with a situation where he is undoubtedly going to have to instruct the jury, because the only standards under the statute come from which say that the test is whether the defendant's conduct was a legitimate conduct, a legitimate force of supply and demand. So the standard, and then according to the instructions again, and these come from civil cases in the futures markets, but they are going to say that if a factor is not legitimate, the price is necessarily artificial, and that, of course, is the heart of a CEA charge. So, you know, let's face it. The government says to this court, and has said in its briefs, that it is not using the MMIP to argue that the defendant's violated the MMIP. I may say that it's inconsistent with representations made in the written opposition to the MMIP, which are contained in volume three of the excerpts from record at page 547 and 554, where the government explicitly said that it wanted to put in the MMIP to show that defendants did violate the tariff. Well, that's what I've been calling the straight up wolf. Right, okay. I understand. Okay, so let's put that aside. Now let's deal with intent. Ms. Vallier described all of these tapes, and that's the heart of the government's case. Tapes. Reliant had a taping system, automatically taped all the phone calls of traders, so they have the complete record of these people's conversations, at least on telephones, about this matter. Your Honor, there is no mention in any of these tapes of the MMIP, of any of the principles in the MMIP, of any of the possible prohibitions in the MMIP. What does that show? Well — They had enough sense not to talk about it. I mean, it doesn't show that they didn't know about them and take action with reference to known and binding standards that were set out in the protocol. I guess my response is, because Ms. Vallier claims that these tapes show that these people acted because of the MMIP, that will not be true, nor will any other witness claim that that was a part of any conversation. Was the MMIP known to the defendants? Of course the MMIP was known to the defendants. There is, however, the MMIP, while the tariff in this case, which is a thousand pages long, the tariff requires lots of things. It prohibits lots of things. The MMIP, however, requires nothing other than for the defendant, for market participants to cooperate in supplying information when requested. I'm not sure, but it sets out what Farkas said as rules of the road. And if you're driving along a highway, it's kind of nice to know what the rules of the road are. One of the things, if that view is accepted, then one of the things that's prohibited in this market is, quote, unquote, unusual trades or transactions. I submit to Your Honor that is not an adequate standard. One questions whether it would be adequate even in a civil case, much less criminal. Well, I mean, so I don't know where that goes. Well, number one, that was not a criminal case at FERC. Number two, after FERC issued that order in June of 2003, three years after the conduct in this case, petitions for rehearing were filed, and FERC said, sorry, but there is no aggrieved party here. This is only an investigation. We haven't ordered anything except an investigation. And it dismissed the petitions for rehearing in that case. Now, ultimately, Reliant, as well as I suppose everybody else settled with the FERC, these matters without admitting liability for anything, and that went away. But that ruling by FERC is certainly inconsistent with the understanding of market participants, not just as said by our expert, Dr. Treinen, whose affidavit is in the record, but by published statements of other people during the crisis saying that the rules do not prohibit withholding by market participants. Now, FERC did adopt a rule in June of 2001, one year after this conduct, which did require market participants to offer their generating capacity, absent, you know, other reasons not to. But that is no more post hoc applicable to the defendant's intent in June of 00 than a FERC ruling in 03, contrary to the understanding of the market participants. What the Judge Walker had to look at, based on everything that was submitted to him, was am I going to turn this trial into a competing testimony by experts on what the law was at the time? What was legitimate and not legitimate under the MMIP, and whether that was a binding regulation or adequate to provide notice? And there's certainly good reasons why a trial judge would not wish to do that. And I would submit, Your Honor, that as to the intent, this was clearly argued to the judge. Sure, he could have written a longer opinion or said more when he made his oral ruling, but that's not required. And he certainly considered that. Now, may I say, the Court is obviously evaluating this where we're not at trial yet, and the government is arguing this is what's going to happen at trial. This is what he's going to instruct the jury, or this is what the defense is going to do. There are lots of things a district judge could do, and rulings on evidence, and how he winds up instructing the jury that, frankly, are not determined yet. But I do wish to say, Your Honor mentioned intent and motive. I wish to call Your Honor's attention to the fact the government now says that, and emphasizes that the government needs the MMIP to show a motive for the defendants to concoct a cover story for their conduct. And the reason for that, I assume, is because of the cases. The Wolfe case, the Stefan case in the Eleventh Circuit, the Smith and Brown cases that have occurred since Wolfe. One thing that is clearly proper in terms of using a regulation would be to show a motive for making false statements. And these happen to be pretty much all in bank entries, false bank entries. If, for example, there is a regulation that prohibits loans in excess of $100,000 to any one borrower, that is the motive for the defendants to get four borrowers to represent to the bank that they're all independent when, in fact, they're not. And so a regulation would be admissible to show the motive for a false statement. But that is not true in this case. There is no false statement. The cover story is not alleged at all as an offense. Those cases involve false statements. This does not. Presumably why the government would contend that statements were a cover story is that the defendants knew they were doing something wrong. Therefore, all they're trying to do is bootstrap the MMIP again into proof that the defendants knew they were doing something wrong. The other thing I'd like to say about motive is Your Honor can search the written opposition by the government to the motion we filed to Your Honors can look at the transcript of the argument before Judge Walker and you will not find that argument made. That argument was made for the first time two weeks later when the government, through Mr. Gilliam, was trying to explain to the judge why they had to take this appeal and send these 80 jurors home and stop this trial. It was not something that was before him at the time. It appears to be an afterthought, again, based on the Stefan case and others. But more important, those cases simply aren't applicable because these false statements are not the heart of the offense. The heart of the offense, as the judge interprets it, and of course we have fought this tooth and nail as to whether this is an adequate and constitutionally sufficient standard, but the standard that we're going to be tried on will be whether the defendants engaged in conduct that was not a legitimate part of supply and demand. And what the government is attempting to use the MMIP for is to say that was not a legitimate part of supply and demand and then tell the jury that it is, therefore, an artificial price. That goes to attempting, as Judge Walker clearly said, to bootstrap a purported violation of the MMIP into a criminal offense. And, Your Honor, I think going back to the MMIP, again, what standards, what things it actually prohibits? What it prohibits is, both in anomalous market behavior and in gaming, it prohibits things such as unusual activity or relating to imports, taking unfair advantage of rules, taking undue advantage of market conditions. These are all things. Clearly, the reason they're here is that they recognize these are not standards that are sufficiently precise to govern anybody's conduct, but they are factors. This is a new market. We just invented this market, so to speak, in 1997, and we have in place a set of rules for a deregulated market. We don't know how they're going to work, so what we're going to do is we're going to monitor the market. And we're going to have these committees who are going to look at these kinds of activities and determine whether the market needs to be changed, the rules need to be modified in order to cope with these problems. And, Your Honor, that, as Dr. Trainin says, who was head of the ISO at the time this market monitoring and information protocol was adopted, that was the purpose of it, that was the understanding of people, but clearly, the standards erected in the MMIP describing transactions to be scrutinized are not adequate to be a test even of civil liability in our view. And let me say, as far as the government in its briefs and in its reply brief, I'm sorry, it's used the analogy of a speed limit. As Ms. McNamara conceded when she argued this case in the district court before Judge Walker, you know, at specific prohibitions which offer, which are relevant to matters of intent, motive, standard of conduct, and so forth, certainly are admissible, you don't exclude all evidence of that, but let's take the speed limit to give a perfect comparison between what's involved in that case and what's involved in this. In a negligent homicide case, in a vehicular homicide case where the standard is recklessness, one puts in evidence of the standard of care required from and known to all drivers. That's what a speed limit is. To say that a market monitoring and information protocol in a case involving specific intent that prohibits nothing more specific than unusual or undue or words like that is, we submit, completely not analogous to the speed limit case. The district judge had to determine what effect is allowing the government's expert to say that the speed limit is going to have on what other evidence is going to be done on misleading or confusing the jury, that is the essence of a discretion. The fact that he didn't refer to every one of these things doesn't make any difference under ONO, if in the record, these are the arguments that were presented to him, these are the considerations that were argued not just in the case itself, but in the case itself, that should be dismissed, all of which the district judge took into consideration, and we respectfully submit that his ruling was not an abuse of discretion and the appeal should be dismissed. Thank you. Thank you. I'd like to make a few points, if I may. Regarding, first, the notion that a admission of the MNIP will devolve into a mini-trial on what the regulations meant or whether or not a mini-trial on what was legitimate in this particular market, that is the subject of the trial in this case. The trial is about, to some extent, what was legitimate and not legitimate in this market, because the jury is going to be asked to determine, in deciding whether or not there was an artificial price, whether or not legitimate forces came to bear on that price. And the way the jury is going to be able to determine how the market was designed to operate, the only thing that would occur with excluding the MNIP would be the jury would be deprived of additional evidence regarding bearing on that particular question. It would not devolve, it has nothing to do with devolving into a mini-trial, because that particular question is going to be the question that's posed to the jury to answer, even with or without the MNIP. Without the MNIP, it will just be deprived of evidence that needs to decide the review. Under our view, I think we've argued in our brief, we win under either an abuse of discretion or a de novo standard of review, because here, as I explained earlier, the trial court actually, its reasons for excluding the evidence, one, that we did not need it, and two, that it was, its reliance upon Wolf was misplaced. And I agree with Judge Reimer's comment that I've argued, and I think is best understood, if to be consistent with the federal rules of evidence, as not an exclusionary case at all, but simply a determination that the government can't use a civil regulation as a legal definition. It really doesn't address the question of whether or not a civil regulation is admissible, except to the extent that it says that it is admissible for intent, background, and motive. So Wolf really does not support at all the district court's ruling here, whether it's an abuse of discretion or a de novo standard of review. With regard to most of the other arguments that Mr. Jeffress has made here this morning, regarding the, what the MMIP really meant, whether or not the defendants actually discussed the MMIP itself on the tapes, those are all arguments that can be presented to the jury. They are arguments that discuss the weight that the MMIP, the jury may give the weight, the weight the jury may give the MMIP in deciding how important it is to this case on those three ways in which the government is offering it. It does not address the question of whether or not it is admissible. In our view, this is nothing different than admitting, for example, a part of a contract where the contract itself governed the party's behavior. The jury will be able to read the words of the contract itself and make a determination as to what they think those words mean. Their expert will testify. Our expert will testify about what we think the MMIP either precluded or what was suspect conduct, and there will be additional evidence about what was suspect conduct and about how this price was set. None of those, none of those concerns that Mr. Jeffress has raised go to the question of whether or not you exclude this very important piece of evidence from the trial entirely. And if there are no further questions, we would ask that you reverse. Okay. Thank you, counsel. The matter just argued will be submitted, and the Court will stand in recess for the day. Thank you.
judges: Rymer, T.G. Nelson, King